Christopher Sproul (Cal. Bar No. 126398)
Stuart Wilcox (Cal. Bar No. 327726)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: wilcox@enviroadvocates.com

Jason Weiner (Cal. Bar No. 259264)
BANK CLIMATE ADVOCATES
2489 Mission Street, Suite 16
San Francisco, CA 94110
Telephone: (310) 439-8702
Email: jason@bankclimateadvocates.org

Attorneys for Plaintiff
BANK CLIMATE ADVOCATES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANK CLIMATE ADVOCATES, a non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE TREASURY, <br><br> Defendant. | Civil Case No. 25-cv-5812 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Bank Climate Advocates ("BCA") alleges as follows:

## INTRODUCTION

1. BCA brings this action under the Freedom of Information Act ("FOIA"), which, amongst other things, allows an aggrieved party to seek relief when records are unlawfully withheld, and authorizes a reviewing court to enjoin the agency from withholding records and to order the production of any agency records improperly withheld from the complainant. 5 U.S.C. § 552(a)(4)(B). BCA also brings this action under the FOIA regulations that the United States Department of the Treasury ("Treasury") has adopted. 31 C.F.R. Subpart A. BCA seeks declaratory and injunctive relief for FOIA violations by the Treasury. BCA submitted a FOIA request to the Treasury on or about January 23, 2025 ("FOIA Request"), and this lawsuit addresses the Treasury's failure to comply with the requirements of FOIA with regard to that FOIA Request.

2. Recognizing that FOIA requesters are harmed when agencies do not ensure prompt public access to agency records, Congress has repeatedly amended FOIA to address unreasonable agency delay. For example, the Electronic Freedom of Information Act Amendments of 1996 confirmed that "[t]he purposes of this Act are to-- (1) foster democracy by ensuring public access to agency records and information; (2) improve public access to agency records and information; (3) ensure agency compliance with statutory time limits; and (4) maximize the usefulness of agency records and information collected, maintained, used, retained, and disseminated by the Federal Government." 110 Stat. 3048, 104 P.L. 231, Sec. 1.

3. Given the time-sensitive nature of FOIA requests, FOIA litigation is subject to expedited judicial consideration. Unlike other civil litigation involving a federal agency, a responsive pleading is required within thirty days of service. 5 U.S.C. § 552(a)(4)(C) ("Notwithstanding any other provision of law, the defendant shall serve an answer or otherwise plead to any complaint made under this subsection within thirty days after service upon the defendant of the pleading in which such complaint is made, unless the court otherwise directs for good cause shown."). Additionally, Congress has specifically said that there is "good cause" for expediting hearings in FOIA actions ahead of those in other civil matters. 28 U.S.C. § 1657(a).

4.  The FOIA Request asks the Treasury to produce:

(1) All documents, not already publicly available on the 'IFC Project Information and Data Portal'[1], that provide information, analysis, details, opinions, studies, or deliberations regarding climate change impacts or mitigation; or greenhouse gas emissions, figures, alternatives analysis, impacts, avoidance measures, or mitigation; for the following International Finance Corporation (IFC) financed projects between 2016-present:

    1. IFC Project Number: 43099 (IFC Project Name: Central Termica de Temane)
    2. IFC Project Number: 39630 (IFC Project Name: YEREVAN CGT)
    3. IFC Project Number: 36627 (IFC Project Name: MYINGYAN)
    4. IFC Project Number: 45205 (IFC Project Name: Syrdarya CCGT)
    5. IFC Project Number: 39096 (IFC Project Name: FCS RE CIPREL V)
    6. IFC Project Number: 40178 (IFC Project Name: SM2PCL)
    7. IFC Project Number: 39879 (IFC Project Name: RIAU PP)
    8. IFC Project Number: 39652 (IFC Project Name: CELSE)
    9. IFC Project Number: 38207 (IFC Project Name: ACWA POWER ZARQA)
    10. IFC Project Number: 45205 (IFC Project Name: Alvoar Equity)
    11. IFC Project Number: 46874 (IFC Project Name: GXYX GFSP)
    12. IFC Project Number: 47515 (IFC Project Name: Votorantim Cimentos Decarb)
    13. IFC Project Number: 43750 (IFC Project Name: Al Douh Cement)

(2) All documents, **not already publicly available on the "IFC Project Information and Data Portal,** that provide information, analysis, details, opinions, studies, or deliberations regarding IFC's Paris Methodology assessments and analysis for any of the

---

[1] The current website for the IFC Project Information and Data Portal is: https://disclosures.ifc.org/.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     2

        above projects IFC approved after it began implementing its Paris Methodology,

        including for projects 45205 (Syrdarya CCGT), 47515 (Votorantim Cimentos Decarb),

        45205 (Alvoar Equity), and 46874 (GXYX GFSP).

(emphasis in original).

5. The FOIA Request provides that it "includes, but is not limited to, documents:

    1.) Internally composed, received, sent, or kept by Treasury; or

    2.) Exchanged between Treasury, and IFC staff and directors (including exchanged between U.S. Executive Directors and their staff at IFC, and IFC staff and directors)."

6. The records BCA has requested in its FOIA Request: (1) will provide BCA, other concerned entities, and affected communities with further evidence and deeper insights into the routine failures of the IFC, and the United States government more broadly, to adhere to their climate change commitments, requirements, and legal obligations for, and in the approval of, IFC investments, including in regards to securing adequate, credible, and supported greenhouse gas ("GHG") emissions estimates, alternatives analysis, and mitigation analysis prior to IFC financing decisions; (2) will assist BCA, other concerned entities, and affected communities in demonstrating that the United States government's and IFC's claims are false that with regard to IFC's investments in natural gas power plants, renewable energy sources were neither economically and technically feasible nor of least cost to communities; (3) to help other concerned entities, and affected communities achieve United States government and IFC policy reform resulting in achievement and routine release of full, credible, and supported GHG emissions quantification, alternatives, and mitigation analysis for public review and comment prior to IFC financing decisions to help prevent and reduce the severity of catastrophic climate change harms, including by helping prevent GHG intensive and expensive new fossil fuel lock in projects such as natural gas power plants and liquified natural gas ("LNG") terminals that the Intergovernmental Panel on Climate Change and International Energy Agency have demonstrated will cause exceedance of the 1.5°C global warming limitation objective; and (4) to assist BCA, other concerned entities, and affected communities in efforts to improve the United States' and IFC's

accountability and transparency in implementing their climate change policies and meeting their climate change commitments.

7. The Treasury, on information and belief, has failed to issue a final determination on the FOIA Request in compliance with FOIA's mandatory timelines; improperly withheld agency records that are responsive to the FOIA Request; failed to conduct an adequate search for records that are responsive to the FOIA Request; failed to properly utilize a FOIA tracking system to provide information on its processing of the FOIA Request; and failed to provide a required estimated date of completion for the FOIA Request. The Treasury's violations of FOIA at issue in this case have thwarted BCA's efforts to timely receive current information in the Treasury's possession, have hampered BCA's efforts to serve as an effective public interest watchdog over the Treasury's activities, and threaten to interfere with BCA's ability to use this information in its ongoing and future advocacy efforts related to (1) aligning IFC's investments, and Treasury's actions at the IFC in reviewing and improving investments and climate change policies, with IFC's and the United States' respective climate change commitments and legal obligations and (2) reducing and preventing substantial GHG emissions from IFC investments that will cause and contribute to catastrophic climate change impacts and exceedance of the 1.5°C global warming limitation objective.

## JURISDICTION

8. This Court has subject matter jurisdiction under 5 U.S.C. section 552(a)(4)(B), which allows an aggrieved party to seek relief when records are unlawfully withheld, and authorizes a reviewing court to enjoin the agency from withholding records and to order the production of any agency records improperly withheld from the complainant. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his duty).

9. This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court has authority to grant injunctive relief pursuant to 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B).

10. This Court has authority to award costs and attorney fees pursuant to 5 U.S.C. §

552(a)(4)(E).

11. "In the event of noncompliance with the order of the court, the district court may punish for contempt the responsible employee, and in the case of a uniformed service, the responsible member." 5 U.S.C. § 552(a)(4)(G).

12. The FOIA claims made in this Complaint are ripe for judicial review and the harm the Treasury has caused to BCA can be remedied by an order of this Court.

13. This Court has personal jurisdiction over the Treasury and its officials because the Treasury is an agency of the federal government operating within the United States.

## VENUE

14. Venue in the United States District for the Northern District of California is proper under 5 U.S.C. section 552(a)(4)(B) because the complainant has its principal place of business in the Northern District of California.

## INTRADISTRICT ASSIGNMENT

15. Intradistrict assignment of this matter to the San Francisco Division of the Court is appropriate pursuant to Civil Local Rule 3-2(d) because BCA's principal counsel resides in San Francisco County, BCA's principal place of business is located in San Francisco, California, and the Treasury maintains an office in Santa Rosa, California where some of the pertinent records sought by BCA are likely stored.

## THE PARTIES

16. Plaintiff BANK CLIMATE ADVOCATES is a non-profit, public benefit corporation, organized under the laws of the State of California, devoted to helping drive the systemic change in finance needed to avert the worst effects of climate change and help transform the global energy system. BCA's focus is on aligning leading public financial institutions' ("PFIs") investments and financing policies and practices with the 1.5°C global warming limitation objective using legal advocacy and action. With such alignment, these PFIs will not only meet their critical share of climate obligations, but the conditions will be created for other public and private banks to follow suit.

17. Any person or entity that files a FOIA request is deemed to have standing to invoke the jurisdiction of the Federal Courts to carry out the judicial review provisions of FOIA. BCA filed the FOIA Request at issue and has standing to bring this FOIA suit.

18. BCA brings this action on its own behalf and on behalf of its adversely affected staff and members. BCA works in furtherance of its goals in part by acquiring information regarding federal and financial institution programs and activities through FOIA. BCA then compiles and analyzes that information and, subsequently, disseminates that information to its membership, the general public, financial institutions, States around the world who control and direct financial institutions like the IFC, and public officials through various sources, including reports, letters, and analyses posted on its website and other websites, through public presentations, and through print and other media interviews and social media postings. BCA's successful efforts at educating the public on issues concerning federal government programs, financial institutions, and activities, including the role of the federal government as a shareholder at multilateral financial institutions like the IFC, that affect the environment contribute significantly to the public's understanding of governmental operations and activities. BCA also uses the information that it acquires through FOIA to (1) participate in federal decision-making processes – including United States votes to approve investments and climate change policies at the IFC, (2) potentially to file administrative appeals and civil actions, and (3) generally to ensure that the United States government complies with federal environmental laws and all of their commitments and legal obligations under international law.

19. BCA uses, and intends to continue to use, FOIA as an important avenue for gaining information about federal agency activities. BCA is harmed when it is denied timely access to records to which it is entitled. Without this information, BCA cannot successfully serve as an effective public interest watchdog ensuring that the federal government is lawfully fulfilling its legal obligations, commitments, and acting in the public interest.

20. BCA intends to continue its use of FOIA to access agency records in the possession of the Treasury. As one example, BCA has concrete plans to submit additional FOIA requests to the Treasury to follow up on the information learned while reviewing agency records responsive to the

present FOIA Request. BCA also intends to continue to use FOIA to access agency records in the possession of Treasury to obtain information about climate change and GHG emissions impact, alternatives and avoidance analysis, and mitigation measures the United States government uses to approve future IFC investments, to determine whether these investments and the due diligence for them adhere to IFC's climate change policy requirements, and to determine whether the United States and the IFC are adhering to their climate change due diligence and harm prevention obligations under international law.

21. One of the purposes of FOIA is to promote the active oversight role of public advocacy groups incorporated in many federal laws applicable to federal agencies, including the Administrative Procedure Act. *See, e.g.,* 5 U.S.C. §§ 551, *et seq*. BCA uses FOIA to publicize activities of federal agencies and to mobilize the public to participate in advocacy to elected and other government officials concerning environmental policies. BCA intends to continue using FOIA requests to fulfill its oversight and advocacy role through scrutinizing agency records, a practice Congress intended to promote through the adoption of FOIA. The FOIA Request seeks to understand the Treasury's actions and policies that result in approvals of IFC investments with substantial GHG emissions that (1) will cause and contribute the 1.5°C global warming limitation objective to be exceeded, (2) that run contrary to the United States' and IFC's legal obligations and commitments, and (3) that can and should be avoided through adequate and feasible GHG emissions impact avoidance and mitigation analyses and measures. These harms can be remedied in part by ensuring BCA has prompt access to public records going forward.

22. BCA, its staff, or one or more of its members have and will suffer direct injury by the Treasury's failure to comply with the statutory requirements of FOIA, and a favorable outcome of this litigation will redress that injury. The Treasury's refusal to provide timely and complete FOIA access to agency records prevents BCA's ability to participate as an informed watchdog. Harm to the environment and to people flows from the Treasury's FOIA violations, which conceal the facts and circumstances surrounding the Treasury's actions and inactions regarding approvals of IFC investments with substantial avoidable GHG emissions that will cause and contribute the 1.5°C global warming limitation

1  objective to be exceeded and will result in lesser citizen enforcement of environmental and public
2  information laws.
3      23.     BCA is also harmed by the Treasury's failure, on information and belief, to provide
4  updated estimated completion dates and to use tracking systems to provide, amongst other things,
5  estimated completion dates for the FOIA Request. This failure prevents BCA from planning for review
6  of the records, deprives BCA of information pertinent to evaluating whether litigation is needed to
7  quickly secure the records that it has requested, and interferes with BCA communicating with the
8  Treasury about the FOIA Request.
9      24.     Defendant the UNITED STATES DEPARTMENT OF THE TREASURY is an agency
10 as defined by 5 U.S.C. § 552(f)(1) that, *inter alia*, is the national treasury and finance department of the
11 federal government. FOIA charges the Treasury with the duty to provide public access to agency records
12 in its possession or control. The Treasury possesses records responsive to the FOIA Request. The
13 Treasury is denying BCA access to its records in contravention of federal law.
14     25.     The Treasury failed to lawfully make a determination on the FOIA Request within the
15 statutory twenty-business-day limit. As of this filing, the Treasury possesses, controls, and unlawfully
16 withholds agency records and information in agency records responsive to the FOIA Request that is not
17 subject to a FOIA exemption and/or release of which would not cause foreseeable harm. As of this
18 filing, on information and belief, the Treasury has not completed FOIA-compliant searches for records
19 responsive to the FOIA Request. As of this filing, on information and belief, the Treasury has not
20 properly provided BCA with updated estimated completion dates or used their FOIA tracking systems to
21 provide BCA with updated estimated completion dates for the FOIA Request.

## STATUTORY AND REGULATORY BACKGROUND

23     26.     FOIA was amended in 2007 to reaffirm that Congress, through FOIA, continues to seek
24 to "ensure that the Government remains open and accessible to the American people and is always based
25 not upon the 'need to know' but upon the fundamental 'right to know.'" Pub. L. No. 110-175, 121 Stat.
26 2524, Section 2 ¶ 6 2007).
27

27. Administrative remedies are deemed exhausted whenever an agency fails to comply with the applicable time limits of FOIA, and this puts all questions of FOIA compliance, including but not limited to failure to comply with the twenty-business-day determination deadline, within the jurisdiction of the federal courts. 5 U.S.C. § 552(a)(6)(C)(i).

28. FOIA requires that an agency disclose records to any person except where the record falls under a specifically enumerated exemption. 5 U.S.C. § 552. The courts have emphasized the narrow scope of these exemptions and "the strong policy of the FOIA that the public is entitled to know what its government is doing and why." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

29. When an agency decides to withhold records under a claim of exemption, it must notify the person making the request of that determination and the reasons therefor. 5 U.S.C. § 552(a)(6)(A)(i). Government agencies bear the burden of proof to show that any withheld records are exempt from the otherwise complete duty to disclose. 5 U.S.C. § 522(a)(4)(B).

30. The FOIA Improvement Act of 2016 ("FIA") made significant amendments to FOIA, effective as of enactment on June 30, 2016. The amendments include changes to the standard by which an agency must evaluate potential withholdings. The FIA dictates that agencies shall withhold information only if disclosure would harm an interest protected by an exemption – what is referred to as the "foreseeable harm standard" – even if that information is arguably subject to an exemption claim by the agency. 5 U.S.C. § 552(a)(8)(A)(i).

31. 5 U.S.C. § 552(a)(6)(A)(i) requires that an agency provide enough information, presented with sufficient detail, clarity, and verification, so that the requester can fairly determine what has not been produced and "the reasons therefore."

32. FOIA also requires an agency to consider partial disclosure whenever the agency determines that full disclosure of a requested record is not possible and to take reasonable steps necessary to segregate and release nonexempt information. 5 U.S.C. § 552(a)(8)(A).

33. In addition to explicit withholdings, an agency's process for addressing FOIA requests also constitutes "withholding" if its net effect is to significantly impair the requester's ability to obtain

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

9

the records or significantly increase the amount of time he or she must wait to obtain them. *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983), *vacated in part on other grounds*, 711 F.2d 1076 (1983).

34. FOIA requires that an agency, upon any request for records, shall promptly make the records available. 5 U.S.C. § 552(a)(3)(A). An agency shall make a determination whether to comply with a request within twenty business days after the receipt of the request and shall immediately notify the party making the request of such determination, the reasons for the determination, and the party's right to appeal. 5 U.S.C. § 552(a)(6)(A)(i).

35. Federal agencies are under a duty to conduct a reasonable search for records responsive to a party's request using methods that can be reasonably expected to produce the records requested to the extent those records exist. 5 U.S.C. § 522(a)(3)(C).

36. In 2007, to remedy widespread and casual violations of FOIA deadlines, Congress also imposed a duty on agencies to provide requesters with tracking numbers for any FOIA request that will take over 10 days to process, to provide and use a website or telephone number that requesters can access to track the status of their FOIA requests, and to provide an estimated completion date for those requests. 5 U.S.C. § 552(a)(7).

37. FOIA disputes are normally resolved on summary judgment, with the burden of proving FOIA compliance falling on the agency even if the requester files, or cross-files, for summary judgment. The agency must carry its burden of demonstrating all elements of FOIA compliance.

## FACTUAL BACKGROUND

38. To help avoid the need to submit the FOIA Request to the Treasury in the first place, on December 6, 2024, BCA submitted an information request to IFC to obtain the documents in the FOIA request.

39. In a letter dated December 20, 2024, IFC refused to provide these records and later denied BCA's appeal of that denial.

40. On January 23, 2025, BCA submitted the FOIA Request to the Treasury. The Treasury confirmed receipt of the FOIA Request that same day. However, it did not assign a tracking number to the FOIA Request at that time.

41. The Treasury's final determination on the FOIA Request was due 20 business days after receipt, *i.e.*, by February 21, 2025.

42. On February 24, 2025, having received no further correspondence beyond confirmation of receipt, BCA wrote to the Treasury. In this email message, BCA stated "Considering 20 business days has past for Treasury to respond to our attached FOIA request, Bank Climate Advocates (BCA) is writing to respectfully request a formal acknowledgement letter that includes a FOIA case number, acceptance of our fee waiver request, and a response to our request with responsive documents."

43. In response, 4 days later on February 28, 2025, the Treasury stated "Please rest assured that we received your FOIA request. We will send an acknowledgement letter within a few days. We apologize for the delayed response."

44. Only on March 3, 2025, did Treasury issue a tracking number for the FOIA Request via email with an attachment.

45. Neither this email nor the attachment, nor the email and attachment together constitute a final determination wherein the Treasury says what it will produce and what it will withhold.

46. The attachment to this March 3, 2025 communication (1) restates the FOIA Request, (2) states that the Treasury has begun the search for responsive records, and (3) alleges that unusual circumstances exist requiring additional time to process, but does not specify what those circumstances are, instead saying "[t]his *may* include the need to consult with multiple program offices, to review a voluminous quantity of records, or to search for records stored in multiple locations."

47. The May 3, 2025 communication does not make a finding on BCA's fee waiver request, does not provide an estimated completion date, does not provide a way to check the status of the request by website or telephone, does not include a final determination on the FOIA Request, and does not provide any responsive records.

48. In short, the March 3, 2025 communication, coming well after the Treasury's final determination deadline, provided no resolution of any of Treasury's noncompliance and merely amounts to restating information BCA provided to Treasury and making some generic statements about what Treasury is doing and allegations that Treasury should be given additional time to respond.

49. Having received no further communications, on March 31, 2025, BCA sent the Treasury a letter notifying it that it had long since missed the FOIA final determination deadline and had not produced any responsive records to date. BCA also requested that the Treasury provide an estimated completion date for the FOIA Request. BCA ended the letter by saying: "While BCA prefers not to resort to litigation if a cooperative approach to resolving this dispute is viable, please be aware that because of the time-sensitive nature of the requested data, BCA may and will be inclined to take legal action if a determination is not promptly forthcoming within the next 30 days[, *i.e.*, by April 30, 2025]. Thank you for your prompt attention to this matter."

50. In response, on April 8, 2025, the Treasury stated that the estimated completion date was "sixty days from today." This would be June 7, 2025.

51. Given the Treasury's statement that it would resolve the FOIA Request by June 7, 2025, BCA attempted to avoid litigation by holding off filing suit beyond the April 30, 2025 deadline it had provided to the Treasury.

52. However, the Treasury never produced a final determination, or even any responsive records or a revised estimated completion date, by June 7, 2025.

53. The above FOIA Request, and the Treasury's violations of FOIA related to it, are the basis for this lawsuit.

54. As of this filing, BCA has not received any further updates from the Treasury since those discussed above. As of this filing, BCA has not received an updated estimated completion date. On information and belief, as of this filing, BCA has not been informed of any website or telephone number whereby it can track the status of its FOIA Request.

55. As of this filing, BCA has not received any records responsive to the FOIA Request from the Treasury. As a result, as of this filing, the Treasury currently possesses or controls, and is constructively withholding, these agency records, which are responsive to BCA's FOIA Request and are not subject to a FOIA exemption. The Treasury's wrongful withholding of these agency records is unlawful.

56. As of this filing, on information and belief, the Treasury has failed to complete FOIA compliant searches for records responsive to the FOIA Request.

57. The Treasury's final determination deadline on the FOIA Request has long since passed. However, as of this filing, the Treasury has not made and communicated a valid final determination for the FOIA Request. This is both a violation of FOIA's deadlines and a constructive withholding of records.

58. BCA now turns to this Court to provide relief that ensures BCA, its membership, and the public have the prompt public access to agency records guaranteed by FOIA. 5 U.S.C. § 552(a)(6).

## FIRST CLAIM FOR RELIEF

**Violation of FOIA - Constructive Denial and Unlawfully Withholding**

**Agency Records Responsive to the FOIA Request**

59. BCA repeats and incorporates by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

60. The Treasury has not communicated to BCA the complete scope of the records it intends to produce and withhold in response to the FOIA Request or its reasons for withholding all withheld records, and has not disclosed to BCA all, or indeed any, records responsive to the FOIA Request that are not properly subject to FOIA withholding.

61. The Treasury violated FOIA by failing to provide a lawful determination and response to BCA's FOIA Request within the statutory twenty-business-day period. 5 U.S.C. § 552(a)(6)(A)(i).

62. This failure to make lawful determinations on BCA's FOIA Request within the timeframe required by FOIA is a constructive denial and wrongful withholding of the records BCA requested, in violation of FOIA. 5 U.S.C. § 552(a)(6)(A)(i), (C)(i).

63. The Treasury continues to violate FOIA by not making valid final determinations on the FOIA Request and by not making all responsive records promptly available to BCA. 5 U.S.C. § 552(a).

## SECOND CLAIM FOR RELIEF

**Violation of FOIA - Unlawfully Withholding Agency Records Responsive to the FOIA Request that are Not Subject to a FOIA Exemption and/or Disclosure of Which Would Not Cause Foreseeable Harm**

64. BCA repeats and incorporates by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

65. BCA has a statutory right to the records it seeks, and there is no legal basis for the Treasury to assert that any of FOIA's nine disclosure exemptions apply to the records in whole or in part. *See* 5 U.S.C. § 552(b)(l)-(9).

66. Disclosure of these records would also not cause foreseeable harm. *See* 5 U.S.C. § 552(a)(8)(A)(i).

67. The Treasury continues to violate FOIA by illegally withholding agency records that are responsive to the FOIA Request, but which the Treasury has not demonstrated are subject to any FOIA withholding provision; which, on information and belief, are not subject to any such provision; and, on information and belief, disclosure of which would not cause foreseeable harm. 5 U.S.C. § 552(b), (a)(8)(A)(i).

## THIRD CLAIM FOR RELIEF

**Violation of FOIA – Failure to Conduct Adequate Searches**

68. BCA repeats and incorporates by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

69. BCA has a statutory right to have the Treasury process its FOIA Request in a manner that complies with FOIA. BCA's statutory rights in this regard were violated when the Treasury unlawfully failed to undertake a search reasonably calculated to locate records responsive to the FOIA Request.

70. The Treasury continues to violate FOIA by failing to conduct and document lawful searches for responsive records, which is a condition precedent to a lawful determination. On information and belief, the Treasury has withheld responsive agency records due to unlawfully narrow searches. 5 U.S.C. § 552(a)(3)(B)-(C).

## FOURTH CLAIM FOR RELIEF

**Violation of FOIA – Failure to Use the FOIA Tracking System**

71. BCA repeats and incorporates by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

72. FOIA mandates that each agency shall maintain a website or telephone system that provides information about the status of a FOIA request to the person making the request that uses the assigned tracking number and includes the date on which the agency originally received the request and an estimated date on which the agency will complete action on the request. 5 U.S.C. § 552(a)(7).

73. On information and belief, the Treasury does not utilize a telephone line dedicated to tracking FOIA request status.

74. On information and belief, the Treasury has not used an online FOIA tracking systems to provide the required information on BCA's FOIA Request.

75. On information and belief, the Treasury has ignored a statutory duty and thereby denied BCA the statutory benefit of the FOIA tracking system mandated by Congress. 5 U.S.C. § 552(a)(7).

## FIFTH CLAIM FOR RELIEF

**Violation of FOIA – Failure to Provide Estimated Completion Dates**

76. BCA repeats and incorporates by reference the allegations in the above paragraphs and all paragraphs of this Complaint.

77. Pursuant to 5 U.S.C. § 552(a)(7)(B)(ii), the Treasury must provide BCA with an "estimated date on which the agency will complete action on the request."

78. The Treasury has failed to provide BCA with an updated estimated date of completion for its pending FOIA Request. In so doing, the Treasury has violated 5 U.S.C. § 552(a)(7)(B)(ii).

## REQUEST FOR RELIEF

WHEREFORE, BCA respectfully requests that this Court enter judgment providing the following relief:

A. Enter findings and declare that the Treasury violated its duties to comply with FOIA's statutory deadlines with regard to BCA's FOIA Request;

B.    Enter findings and declare that the Treasury violated FOIA by unlawfully withholding agency records responsive to BCA's FOIA Request;

C.    Enter findings and declare that the Treasury violated FOIA by failing to conduct searches reasonably calculated to locate the records responsive to BCA's FOIA Request;

D.    Enter findings and declare that the Treasury violated FOIA by failing to properly use the FOIA-mandated tracking system for BCA's FOIA Request;

E.    Enter findings and declare that the Treasury has violated its duty to provide BCA with a current estimated completion date for BCA's FOIA Request;

F.    Direct by order that the Treasury provide BCA with a lawful determination on BCA's FOIA Request by a date certain;

G.    Direct by order that the Treasury conduct a lawful search for responsive records;

H.    Direct by order that the Treasury provide within ten business days all agency records responsive to BCA's FOIA Request that are not properly subject to withholding pursuant to one of the nine recognized FOIA exemptions and/or for which the Treasury cannot show foreseeable harm;

I.    Direct by order that the Treasury provide BCA with a detailed statement justifying each withholding of an agency record, or portions thereof, in accordance with the indexing requirements of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974);

J.    Grant BCA's costs of litigation, including reasonable attorney fees as provided by FOIA, 5 U.S.C. § 552(a)(4)(E); and,

K.    Provide such other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED, July 11, 2025.**

_____
Christopher Sproul (CA Bar No. 126938)
Environmental Advocates
5135 Anza Street
San Francisco, CA 94121
(415) 533-3376
csproul@enviroadvocates.com

*Attorney for Plaintiff*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    16